## UNION TRUST CO. OF PITTSBURGH v. DRISCOLL.

### No. 8336.

Circuit Court of Appeals, Third Circuit.
Argued July 8, 1943.
Decided Sept. 17, 1943.

---

Bernard Chertcoff, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and Charles F. Uhl, U. S. Atty., of Pittsburgh, Pa., on the brief), for appellant.

William Wallace Booth, of Pittsburgh, Pa. (W. A. Seifert and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa., on the brief), for appellee.

Before JONES, DOBIE, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

This suit is to recover overpayment of estate tax upon the estate of Melissa Stewart McKee Carnahan who died on December 22, 1936. The collector concedes the overpayment but resists recovery on the grounds that there was a failure to include in the gross estate the value of property in a trust created by decedent in her lifetime. From a judgment in the court below in favor of the plaintiff the collector has taken this appeal.

In 1918 the decedent created by oral declaration a trust in the name of herself and her husband as trustees for four children of her brother. In 1931 the terms of the orally expressed trust were put in writing and signed by decedent and her husband. The trust was irrevocable by its terms. It fixed the shares the beneficiaries were to receive upon final distribution but reserved to the "Trustees the right to change or vary the relative proportions to be distributed to said beneficiaries upon final distribution as in their judgment said Trustees shall deem best." If prior to termination of the trust one of the trustees died, the rights and duties were to devolve upon the survivor.

JONES, Circuit Judge, dissenting.

The appellant contends that the power of the decedent and her husband to change the proportional interests of the named beneficiaries requires the inclusion of the trust property in her gross estate under § 302(d) of the Revenue Act of 1926 as amended.[1] That provision makes a part of the gross estate property transferred by decedent by trust or otherwise "where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent

[1] 26 U.S.C.A. Int.Rev.Acts, pages 228–230.

154

alone or in conjunction with any person, to alter, amend, or revoke, * * *." If the property comes within § 302(d), there is no constitutional barrier to its application whether the trust dates from 1918, the date of its oral declaration, or 1931, the year in which it was expressed by formal writing. Porter v. Commissioner of Internal Revenue, 1933, 288 U.S. 436, 53 S.Ct. 451, 77 L.Ed. 880; Millard v. Maloney, 3 Cir., 1941, 121 F.2d 257, certiorari denied 1941, 314 U.S. 636, 62 S.Ct. 100, 86 L.Ed. 511; Witherbee v. Commissioner of Internal Revenue, 2 Cir., 1934, 70 F.2d 696, certiorari denied 1934, 293 U.S. 582, 55 S.Ct. 96, 79 L.Ed. 678.[2] The reservation of the power to shift the interests of the beneficiaries is an attribute of the ownership of the property and is substantially equivalent to that power of disposal with respect to his property possessed by any decedent which renders his property subject to an estate tax. See 1 Paul, Federal Estate and Gift Taxation (1942) § 7.09. The principle is equally applicable, and has been held controlling where the power retained is merely to vary the proportions of the trust estate within a specified group. Chickering v. Commissioner of Internal Revenue, 1 Cir., 1941, 118 F.2d 254, 139 A.L.R. 508, certiorari denied 1941, 314 U.S. 636, 62 S.Ct. 70, 86 L.Ed. 511; Guggenheim v. Helvering, 2 Cir., 1941, 117 F.2d 469, certiorari denied Guggenheim's Estate v. Com'r, 1941, 314 U.S. 621, 62 S.Ct. 66, 86 L.Ed. 499. If we had here a stranger as trustee, with the power to alter the interests of the named beneficiaries within the group reserved to the settlor, there would be no question that the trust corpus was within the gross estate of the settlor. The instant case, however, presents an additional factor which is claimed to make a difference.

■ The contention made by the plaintiff on this point is that upon the creation of the trust, the power to alter the beneficial interests of the beneficiaries was vested in the decedent in her capacity as trustee, not merely as grantor. The effect of this, it is said, is the same as if the donor were another person. There was no right in the donor as an individual, therefore, to make any change. This argument was rejected by the First Circuit and the Board of Tax Appeals on a similar set of facts. Welch v. Terhune, 1942, 126 F.2d 695, certiorari denied 1942, 317 U.S. 644, 63 S.Ct.

37, 87 L.Ed. ——; Moir v. Commissioner of Internal Revenue, 1942, 47 B.T.A. 765. Contra: Nicholson v. United States, D.C. S.D.Cal.1938, 25 F.Supp. 424.

We agree with the First Circuit and the Board. Although the power of alteration was by the terms of the trust vested in the "Trustees", the settlor and one of the trustees were one and the same, the decedent. Describing the power possessed by her as a fiduciary one, if that it be, does not mean that she could not have exercised it, although its exercise would be restricted by the terms of the deed of settlement and the legal consequences of those terms as applied to the management of the trust estate. See Reinecke v. Smith, 1933, 289 U.S. 172, 176, 177, 53 S.Ct. 570, 77 L.Ed. 1109. But she could still change the enjoyment of the beneficial interests. Thus she still had a string attached to her beneficence, albeit that string was weaker than if she held it in the sole capacity of settlor. It was sufficient, we believe, to render the interests thus retained includable in her gross estate, under the provisions of the Act.

■ Section 302(d) was enacted and repeatedly amended as the legislative response to tax avoidance attempts. 1 Paul, supra § 7.06. That manifest purpose could be easily frustrated if the scope of the section were made to depend upon the choice of a single word by the transferor. The title conferred by the settlor upon himself, not the extent of ownership retained, would become the dividing line between inclusion and exclusion of property for estate tax purposes. There is no room for such a construction; the Act itself provides the criterion of taxability. Section 302(d) of the 1926 and 1934 Acts makes no distinction between the capacity in which a settlor reserves unto himself any power to change the beneficial interests of his apparent grant. It merely requires that the decedent shall have made a transfer by trust which would be subject to such a power at the date of his death. And this, decedent did here.

The subsequent legislative history of the section to some extent confirms this conclusion. A 1936 amendment, operative prospectively only, made the capacity in which the power was exercisable, and the time when or the source from which the power was obtained, immaterial. The legis-

---

[2] Subdivision (h) of § 302 expressly makes the section applicable whether the trust was created before or after the enactment of the section.

lative notes (see 1 Paul, supra § 7.06, f.n. 18) concerning the amendment indicate that it was thought desirable by reason of the decision of the Supreme Court in White v. Poor, 1935, 296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. 80, and that to some extent the amendment was declaratory of existing law. In White v. Poor the settlor was an original trustee who had resigned and was later elected by the other trustees to fill a vacancy. The property was held not includable in her estate because she acquired power to terminate the trust not by any reservation of her own but by the action of the trustees. The fair inference is that the legislators deemed the parenthetical insertion they made, "(in whatever capacity exercisable)", declaratory of existing law. This was the construction placed upon the amendment by T.D. 4729, 1937-1 Cum.Bull. 284, and approved in Welch v. Terhune, supra, and it appears highly tenable to us.

The plaintiff makes one additional point. Since the trust continued after the decedent's demise and since the power to alter passed on to the succeeding and/or surviving trustee, her death, it is argued, did not finally terminate the power of the trustees to alter the beneficial interests. Granted that this is true in fact, we are not quite sure where this is supposed to lead us to as a legal conclusion. It certainly does not show that the decedent could not change the beneficial interests in her lifetime. Only upon death did that power come to an end. What took place when her successors assumed control cannot affect the questions of taxation as to her estate.[3]

The judgment of the District Court is reversed and the case remanded with directions to enter judgment for the defendant.

JONES, Circuit Judge (dissenting).

In my opinion, the power to alter, amend, or revoke here reserved was not such as to render the trust property includible in the settlor's gross estate under Sec. 302(d) of the Revenue Act of 1926, which is the relevant statute so far as the federal tax on this decedent's estate is concerned. The creation of the trust, which originally was by oral declaration in 1918, was accompanied by the settlor's legally effective and complete contemporaneous transfer of the res to the trustees (one of whom was the settlor). The transfer was irrevocable and, so far as the settlor's being a trustee is concerned, the effect was no different than if another person had been named in her stead. Cf. Becker v. St. Louis Union Trust Co., 296 U.S. 48, 50, 56 S.Ct. 78, 80 L.Ed. 35, reversed on another ground in Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368. Subsequently, by written instrument of June 22, 1931, the trust was confirmed in substantially the terms of the original oral declaration. The power to alter, amend, or revoke (which extended only to the right to reapportion the shares in the trust income among specifically identified and definitely limited third party beneficiaries) was reposed in the trustees and their successors as such. That fact, I think, spelled the nonincludibility of the trust property in the decedent's estate under Sec. 302(d) as that provision stood in the Revenue Act of 1926 before amendment. Cf. Nicholson v. United States, D.C., 25 F.Supp. 424, 425, 426; Daniel J. Gallery et al. v. Commissioner, 38 B.T.A. 1211.

Of course since the amendment of Sec. 302(d) of the Revenue Act of 1926 by Sec. 805(a) of the Revenue Act of 1936, 26 U. S.C.A. Int.Rev.Acts, page 229, the limitation of the critical power to such as is exercisable by a settlor in his individual capacity (acting either alone or in conjunction with any person) is no longer important where the amendment is applicable. As so amended, Sec. 302(d) now embraces any property transferred in trust, the enjoyment whereof is subject at the date of the transferor's death to any change through his exercise (alone or with another) of the power to alter, amend, revoke, or terminate *in whatever capacity exercisable* and *without regard to when or from what source the decedent (settlor) acquired such power*. But, to relate the 1936 amendment back so as to embrace the power respecting the trust in the instant case would work a deprivation of property in violation of the Fifth Amendment. See Helvering v. Helmholz, 296 U.S. 93, 97, 98, 56 S.Ct. 68, 80 L.Ed. 76; White v. Poor, 296 U.S. 98, 102, 56 S.Ct. 66, 80 L.Ed. 80.

In answer to the constitutional objection to applying the 1936 amendment to the facts of this case the Collector argues that the portion of the amendment (viz., "in whatever capacity exercisable") which obliterates the distinction between a settlor's several capacities as an individual and as a trustee was but declaratory of existing law. I do not think so, notwithstanding a

---

[3] This point was also raised in Welch v. Terhune and a like conclusion reached.

statement in H.Rep. No. 2818, 74th Cong. 2d Sess. p. 9, that "To some extent [just what is not indicated], it is believed this amendment [of Sec. 302(d)] is declaratory of existing law." Prior to the amendment the applicability of Sec. 302(d), 26 U.S.C. A. Int.Rev.Acts, page 228, had been made to depend upon the power's being exercisable by the donor in his individual capacity. See Nicholson v. United States, and Daniel J. Gallery v. Commissioner, loc. cit., supra. Moreover the importance of the distinction as to the capacity in which the power was exercisable by the deceased transferor seems to be implicit in the decision in White v. Poor, supra, which the amendment of 1936 was expressly designed to offset. True enough, in White v. Poor the settlor, who was one of the original trustees in whom was reposed the power to terminate the trust, resigned her trusteeship, but a year later she again assumed that office upon election thereto by the other trustees. Thenceforth until her death she had the power in conjunction with the other trustees to terminate the trust, but she was none the less the settlor who had made the transfer in trust. The manner in which she reacquired the power to terminate the trust only served to give point to the limited capacity in which the power was exercisable. It seems to me that the mandatory inclusion of the provision "in whatever capacity exercisable" was just as essential to meeting the situation presented by the decision in White v. Poor as was the other added clause, viz., "without regard to when or from what source the decedent acquired such power". If that is so, then certainly the 1936 amendment was not declaratory of the law in part here material.

Furthermore I think that the power vested in a decedent to alter, amend, or revoke his transfer in trust which subjects the enjoyment of the trust at the date of his death to any change through the exercise of the power contemplates a conclusively effective change and not such a change as may be completely nullified from the moment following his death through his successor trustees' subsequent competent exercise of the continuing power. In this case the power to reapportion interests in income among the specified beneficiaries was exercised for the first time by successor trustees after the settlor's death. This, of itself, points up the capacity to which the exercise of the power was attached. I am not unmindful that Welch v. Terhune, 1

Cir., 126 F.2d 695, holds to the contrary, but, with all deference, I feel that that decision overlooks the relevant influence of the decedent's death as the necessarily efficient cause (under a death duty statute) for limiting the decedent's change of the trust and for rendering it unchangeable thereafter. Nor does the fact that in changing beneficial interests in the trust income the trustees did not act in a fiduciary relation to the beneficiaries seem to be the thing of importance under Sec. 302(d) prior to its amendment but rather that the action to that end by authorized nominees (including even the settlor) was pursuant to a power not attaching to the transferor in her individual capacity which her death must necessarily terminate.

For these reasons I think the case was correctly decided by the court below and should therefore affirm.